OPINION
{¶ 1} This is an accelerated calendar case submitted on the record and the briefs of the parties. Appellant, Lee P. Ross, appeals the judgment entered by the Portage County Court of Common Pleas. After a bench trial, the trial court entered judgment in favor of appellee, William "Bill" Sweeney.
 {¶ 2} Ross and Sweeney entered into a business partnership in 1996. They formed a corporation, "Good Used Cars, Inc.," and opened a used car dealership in Kent, Ohio. Ross provided $70,000 to the business, while Sweeney provided $35,000. Part of both individuals' contribution was classified as a stock purchase, and part of the contribution was classified as loans. The parties agreed to split any profits or losses in a two to one ratio, in favor of Ross.
 {¶ 3} The business was unsuccessful. In April 1997, Sweeney decided to get out of the business. According to the Sweeney's testimony, when he left the business there was $39,267 remaining in cash, eleven cars valued at $47,623, and about $5,500 in miscellaneous equipment and accounts receivable, for a total business value of $92,641. At trial, there was conflicting evidence regarding Sweeney's departure. Ross testified that Sweeney wrote himself a check for $30,000 and disappeared. Sweeney testified that he valued all the assets of the business at slightly more than $90,000 and both parties agreed that he would take $30,000 in cash, while Ross would keep the remainder of the assets and stay in business.
 {¶ 4} Ross took the remaining cars to another used car lot, in Austintown, Ohio, that he owned with his brother-in-law. This used car lot also operated under the name of "Good Used Cars, Inc." However, Ross testified each lot had separate ownership agreements and the cars he sold from the business with Sweeney were accounted for independently. The business in Austintown also failed, and some of the cars from the Ross and Sweeney business were sold at wholesale. This resulted in Ross suffering a loss on the vehicles remaining from his business with Sweeney.
 {¶ 5} Ross filed the instant lawsuit against Sweeney alleging that Sweeney breached the agreement between the parties. Ross sought $28,077 in compensatory damages. In addition, Ross sought attorney fees, court costs, interest, and $100,000 in punitive damages.
 {¶ 6} The matter proceeded to arbitration, and the arbitrator recommended a judgment in favor of Ross in the amount of $24,600. Sweeney appealed this arbitration award and requested a trial de novo. Following a bench trial, the trial court permitted the parties to submit proposed findings of fact and conclusions of law. Thereafter, the trial court entered judgment in favor of Sweeney.
 {¶ 7} Ross has timely appealed the judgment of the trial court. Ross' first assignment of error is:
 {¶ 8} "Trial court decision is against the manifest weight of the evidence."
 {¶ 9} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."[1]
 {¶ 10} In addition to the $30,000 Sweeney took when he left the business, he took a total of $5,700 in incremental payments during the six months the business was in operation. Sweeney testified that he was to be paid $600 per week, as a salary for running the day-to-day operations of the business. Defendant's exhibit D-5 states that Sweeney would be entitled to $20,400 for his work from August 1996 to April 1997, a total of thirty-four weeks. Ross testified there was discussion about Sweeney earning a salary, but that this was to occur after the business was turning a profit.
 {¶ 11} Ross asserts that Sweeney essentially took the $30,000 and disappeared. However, Sweeney testified that he had a discussion with Ross and the two agreed that Sweeney would make a list of the assets of the business and then take his third in cash, while Ross would take the remaining two thirds of the assets of the business. Testimony of both Ross and Sweeney support this theory, as they both testified that the two of them helped move the cars to the Austintown lot.
 {¶ 12} Sweeney determined the value of the cars remaining on the lot by using the cars' stock card number. The stock card number was an internal valuation of the cars that was determined by what the business paid for the cars, plus the value of any repairs that were done to the cars.
 {¶ 13} At trial, Sweeney testified that the parties had an agreement to wind down the business. Specifically, Sweeney testified, "[Ross] said, give me a complete inventory of what we have and we will divide that up and you can move on." This is circumstantial evidence that the parties agreed to use the stock card value. The parties needed a means to divide their inventory at that time. The stock card value was a sufficient way to do this.
 {¶ 14} Ross claims that the value of the eleven remaining cars should have been determined by what they were actually sold for. The witnesses testified that there were a variety of methods to determine the value of the cars. The problem with valuing the cars at what they sold for, was that they were sold months after Sweeney had left the business, at a time when Sweeney had no control over the sales. There was evidence presented that Ross intended to remain in the business, move the cars to the Austintown lot, and sell them for a profit. In fact, most of the cars were sold at wholesale (for a loss), after the Austintown business failed. Presumably, the revenue received from a car that is wholesaled is substantially less than it would be if the car were sold on a sales lot for retail value.
 {¶ 15} The stock card value of the cars was an adequate means of determining the value of the cars. Had Ross and Sweeney decided to sell the cars when Sweeney left, the sale price would have been an appropriate method to determine the value of the cars. However, they did not sell the cars at that time. Rather, the evidence presented revealed that they agreed to divide the inventory at that time, so that Sweeney could move on. The stock card value was a reasonable way of determining the value of the cars at the time the business failed. Although there was evidence presented regarding various valuation methods, the parties were free to agree on a method of their choosing. Using the stock card value is consistent with the evidence presented regarding the parties' agreement to divide the inventory, allowing Sweeney to get out of the business.
 {¶ 16} We note that there was conflicting evidence presented on several of the key issues in this case. However, the credibility of the witnesses and the weight to be given to the evidence is for the trier of fact to determine.[2]
 {¶ 17} The judgment of the trial court was not against the manifest weight of the evidence, as there was competent, credible evidence to support it. Specifically, there was evidence that Sweeney was to earn a salary and, thus, was entitled to the $5,700 as compensation for working at the sales lot on a day-to-day business. Also, there was evidence that the parties agreed that the business would be wound down in the manner it was, with Sweeney taking his share in cash, and Ross keeping the remainder of the assets, including the eleven cars, which were to be sold at his other business. Finally, there was evidence presented suggesting that the parties agreed to use the stock card value as the value for the eleven cars.
 {¶ 18} Ross' first assignment of error is without merit.
 {¶ 19} Ross' second assignment of error is:
 {¶ 20} "Abuse of discretion."
 {¶ 21} Ross claims that the delay between the trial and the trial court's judgment constitutes an abuse of discretion. He argues this delay affected the trial court's findings. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[3]
 {¶ 22} There is no evidence that the delay affected the trial court's judgment. In our analysis of Ross' first assignment of error, we held that the trial court's judgment was not against the manifest weight of the evidence. The trial court also had the parties submit proposed findings of fact and conclusions of law. We note that both parties filed their proposed findings of fact and conclusions of law less than one month before the trial court issued its judgment entry.
 {¶ 23} While there was a delay between the trial and the court's judgment, this delay was not an "abuse of discretion."
 {¶ 24} Ross' second assignment of error is without merit.
 {¶ 25} The judgment of the trial court is affirmed.
DONALD R. FORD, P.J., and JUDITH A. CHRISTLEY, J., concur.
[1] C. E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
[2] (Citations omitted.) Mullen v. Byers (Sept. 28, 2001), 11th Dist. No. 2000-T-0066, 2001 Ohio App. LEXIS 4414, at *9.
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.